UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| PEGGY THORNTON, | Case No.: 2:21-cv-01123-APG-BNW |
|---|---|
| Plaintiff | **Order Granting Motion to Dismiss** |
| v. | [ECF No. 38] |
| PORTOLA DEL SOL OPERATOR, LLC; TMIF II PORTOLA, LLC; APARTMENT MANAGEMENT CONSULTANTS, LLC; and RENE RICHARDSON | |
| Defendants | |

Plaintiff Peggy Thornton brought this *qui tam* suit under the False Claims Act,[1] alleging that the defendants demanded illegal side payments while under a Housing Assistance Payment (HAP) contract for her lease at 1915 Simmons Street, apartment 2009. She alleges that the defendants entered into a HAP contract with the Southern Nevada Regional Housing Authority (SNRHA) that prohibited them from charging side payments not set forth in the approved lease, but they nevertheless demanded that she pay common area maintenance fees that were not included in the approved lease from June 2015 to July 2020.

Defendant TMIF II Portola, LLC (TMIF) moves to dismiss, arguing that the complaint improperly lumps all the defendants together and does not identify what TMIF did given that TMIF purchased the property after Thornton signed her last lease with the prior property owner. TMIF thus contends that Thornton has not and cannot plausibly allege that it submitted a claim

---

[1] A private individual may bring an FCA claim on the United States' behalf and share in the proceeds of a successful claim. 31 U.S.C. § 3730. The United States declined to intervene to prosecute this case. ECF Nos. 17; 18.

for payment to SNRHA, that it did anything to cause SNRHA to issue payments, or that TMIF intentionally defrauded SNRHA.

Thornton responds that in October 2020, her counsel sent TMIF a demand letter notifying TMIF of the illegal side payments and requesting reimbursement, but TMIF did not respond. She argues that same month TMIF accepted the HAP contract its predecessor signed, and SNRHA thereafter issued payments subsidizing Thornton's rent. She thus contends that she has alleged that TMIF accepted the HAP contract and demanded payment from SNRHA, SNRHA made those payments, and TMIF accepted the payments after having been put on notice of their illegality.

I grant TMIF's motion because the complaint does not plausibly allege with particularity that TMIF made a claim for payment from SNRHA, that TMIF's conduct was material to SNRHA's decision to issue payments to TMIF, or that TMIF knowingly defrauded the United States. The arguments Thornton makes in her response are not alleged in the complaint and, in any event, make no logical sense under her own timeline because she stopped renting apartment 2009 in July 2020. Consequently, TMIF's acceptance of a HAP contract for a different apartment in October 2020 could not have been a claim for rent payments for apartment 2009 in February to July 2020 and could not have induced SNRHA to make those payments. Additionally, the demand letter post-dated the end of Thornton's lease of apartment 2009. Thus, it sheds no light on TMIF's state of mind in accepting rent payments from February to July 2020 based on a HAP contract and lease signed by its predecessor.

**I. BACKGROUND**

Thornton participates in the Section 8 Tenant-Based Housing Choice Voucher Program. ECF No. 1 at 1-2. Under Section 8, the United States Department of Housing and Urban

Development (HUD) contracts with public housing agencies like SNRHA. *Id.* at 3. SNRHA in turn enters into contracts with landlords to make monthly housing assistance payments on behalf of eligible tenants. *Id.* In addition to agreeing to the HAP contract with SNRHA, the landlord agrees to a lease with the eligible tenant. *Id.* Under federal law, a landlord cannot receive side payments not set forth in the HAP contract. *Id.* at 7.

In May 2015, defendant Portola Del Sol Operator, LLC (Del Sol) signed a HAP contract with SNRHA to rent apartment 2009 to Thornton. *Id.* at 4; ECF No. 39-2.[2] Under the HAP contract, the monthly rent was set at $709, with SNRHA paying $521 toward the rent and Thornton paying $188. ECF No. 39-2 at 2, 11. The HAP contract prohibits the owner from accepting any other payments during the contract's term. *Id.* at 7. In June 2015, Thornton signed a lease with Del Sol to rent apartment 2009. ECF Nos. 1 at 4; 39-1 at 2. Neither the HAP contract nor the 2015 lease stated that Thornton was responsible for paying common area maintenance fees. ECF No. 1 at 4. Del Sol nevertheless demanded that Thornton pay those fees, which she did. *Id.*

Thornton renewed the lease with Del Sol in June 2016, June 2017, June 2018, and June 2019. *Id.* at 4-5; ECF Nos. 39-3; 39-4; 39-5; 39-6. Each of these leases had an addendum regarding common area maintenance fees, but they did not specify the amount Thornton was responsible for paying. ECF No. 1 at 4-5. Del Sol did not provide these leases to SNRHA. *Id.* Del Sol sold the property to TMIF in December 2019. *Id.* at 2. Thornton's last lease ended in

---

[2] TMIF attaches to its motion the HAP contract and leases. ECF Nos. 39-1 through 39-6. I can consider these documents without converting TMIF's motion to dismiss into one for summary judgment because Thornton's claims depend on the HAP contract and leases, and no one disputes their authenticity. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

3

July 2020. *Id.* Thornton paid the fees throughout her time renting the apartment, for a total of $1,322.29. *Id.* at 7.

Based on these facts, Thornton alleges that the defendants knowingly collected the side payments and thereby breached the False Claims Act by inducing SNRHA to make the HAP contract monthly rental payments. *Id.* Thornton alleges that if SNRHA knew about the side payments, it would have terminated the HAP contract and barred the defendants from further participating in the Section 8 program. *Id.* She sues on behalf of the United States and seeks to recover civil penalties, three times the amount of the United States' damages, her share of any proceeds as the *qui tam* relator, and attorney's fees and costs. *Id.* at 8.

## II. ANALYSIS

Under the FCA, anyone who "knowingly presents . . . a false or fraudulent claim for payment" to the United States is liable to the Government for a civil penalty plus three times the damages the United States suffers as a result. 31 U.S.C. § 3729(a). A person acts knowingly if they have actual knowledge, or if they act in deliberate ignorance or reckless disregard of the pertinent information's truth or falsity. *Id.* § 3729(b)(1). To make a claim for payment, a person must "request or demand" payment that is "presented" to a Government employee or agent. *Id.* § 3729(b)(2). Consequently, to state a claim under the FCA, the plaintiff must allege "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017).

Because a claim under the FCA alleges fraud, a complaint "must not only be plausible" under Federal Rule of Civil Procedure 8(a), but it also must be pleaded "with particularity under Rule 9(b)." *Id.* at 898. "To satisfy Rule 9(b), a pleading must identify the who, what, when,

where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation omitted). Under Rule 9(b), a complaint cannot "merely lump multiple defendants together" without differentiating between them to inform each defendant of its alleged role in the fraud. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (quotation omitted). However, a plaintiff may properly use collective allegations "to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Id.*

The complaint in this case does not plead fraud with particularity because it lumps all the defendants together under the term "Portola" and does not identify each one's role in the alleged fraud. The documents underlying Thornton's complaint show that Del Sol signed the 2015 HAP contract and each of the leases at issue. The only specific allegations about TMIF are that it bought the property in December 2019 and that Thornton continued to make side payments through the end of the lease in July 2020. There is no allegation that TMIF signed or assumed the HAP contract, that it presented a request for payment to SNRHA, that anything it presented or represented was material to SNRHA's decision to make the rent payments through July 2020, or that TMIF knew or recklessly disregarded that collecting the side payments was illegal.

In her response to the motion to dismiss, Thornton contends that TMIF accepted the HAP contract in October 2020, that this induced SNRHA to make payments from February 2020 to July 2020, and that TMIF had the requisite state of mind because she sent TMIF a demand letter in October 2020 advising it of the illegal side payments. She attaches to her opposition an October 10, 2020 demand letter; an October 5, 2020 document in which TMIF accepts assignment of a HAP contract for Thornton to rent apartment 2027 (not 2009); and an October 5,

2020 automated deposit form related to Thornton renting apartment 2027 (not 2009). ECF No. 42 at 13 to 106.  I cannot consider Thornton's arguments or exhibits when ruling on the motion to dismiss because none of this was alleged in or attached to the complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The complaint does not allege anything happened past July 2020 or in relation to apartment 2027. *See* ECF No. 1 at 2 (alleging Thornton rented apartment 2009 from June 2015 through July 2020); *id.* at 7 (alleging she made the side payments from June 2015 to July 2020).  Nor does it allege TMIF assumed a HAP contract related to apartment 2009, submitted a payment authorization form related to that apartment lease, or was sent a demand letter related to that apartment before the lease expired.[3]

Even if I considered Thornton's new arguments and exhibits, they do not logically support her claim that TMIF is liable for false claims in relation to her lease of apartment 2009.  The October 2020 assignment post-dates Thornton's lease as alleged in the complaint and refers to an entirely different apartment number.  It thus could not have constituted a demand for payment to SNRHA for rent for apartment 2009, nor could it have been material to SNRHA's decision to make payments in February to July 2020.  Likewise, the October 2020 demand letter sheds no light on TMIF's mental state when it allegedly accepted rent and side payments from February 2020 to July 2020 because TMIF could not knowingly or recklessly disregard information in a letter it had not yet received.

I therefore grant TMIF's motion to dismiss.  However, I grant Thornton leave to amend because it is not clear that amendment would be futile. *Sonoma Cnty. Ass'n of Retired Emps. v.*

---

[3] Thornton appears to argue in her response that TMIF's acceptance of the side payments induced SNRHA to pay its portion of the HAP contract. ECF No. 42 at 6.  But Thornton's claim is that SNRHA never knew about the side payments and, had it known, it would have terminated the HAP contract, so it is not clear how TMIF's acceptance of the side payments induced SNRHA to make payments under the HAP contract.

*Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (quotation omitted)). Thornton may take this opportunity to plead her claims against the other defendants with particularity as well.[4]

## III. CONCLUSION

I THEREFORE ORDER that defendant TMIF II Portola, LLC's motion to dismiss **(ECF No. 38) is GRANTED**.

I FURTHER ORDER that plaintiff Peggy Thornton may file an amended complaint by December 8, 2023, if facts exist to do so.

DATED this 9th day of November, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[4] For example, Thornton identifies defendant Apartment Management Consultants, LLC as the property management company and defendant Rene Richardson as the property manager, without any factual allegations as to what each of these defendants did to subject them to liability. *See* ECF No. 1 at 2.