UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PEGGY THORNTON,<br><br>    Plaintiff<br><br>v.<br><br>PORTOLA DEL SOL OPERATOR, LLC; TMIF II PORTOLA, LLC; APARTMENT MANAGEMENT CONSULTANTS, LLC; and RENE RICHARDSON,<br><br>    Defendants | Case No.: 2:21-cv-01123-APG-BNW<br><br>**Order Denying Defendant TMIF's Motion to Dismiss and Granting Defendants AMC and Richardson's Motion to Dismiss**<br><br>[ECF Nos. 81, 85] |

Plaintiff Peggy Thornton brought this *qui tam* suit under the False Claims Act[1] against defendants Portola Del Sol Operator, LLC (Del Sol) and TMIF II Portola, LLC (TMIF), the owners of the apartment she leased. She alleges that Del Sol and TMIF demanded illegal side payments from her while they received rent subsidies from Southern Nevada Regional Housing Authority (SNRHA) under a Housing Assistance Payment (HAP) contract. Thornton also alleges that defendants Apartment Management Consultants, LLC (AMC) and its agent Rene Richardson, who were managers of the property, facilitated the illegal side payments by demanding that Thornton pay them each month.

TMIF moves to dismiss, arguing that Thornton's first amended complaint does not plead with particularity the elements of a False Claims Act violation. ECF No. 81. AMC and Richardson also move to dismiss, arguing the same. ECF No. 85. Thornton opposes both motions. I deny TMIF's motion because Thornton plausibly alleges with particularity that TMIF

---

[1] A private individual may bring a False Claims Act claim on the United States' behalf and share in the proceeds of a successful claim. 31 U.S.C. § 3730. The United States declined to intervene to prosecute this case. ECF Nos. 17; 18.

made a claim for payment from SNRHA under the implied false certification theory, that TMIF's conduct was material to SNRHA's decision to issue payments to TMIF, and that TMIF had the requisite scienter. I grant AMC and Richardson's motion because Thornton fails to plead with particularity that AMC and Richardson submitted a false claim or certified a false statement to SNRHA or that they had the requisite scienter. However, I grant Thornton leave to amend her complaint as to the claims against AMC and Richardson.

## I. BACKGROUND

Thornton participates in the Section 8 Tenant-Based Housing Choice Voucher Program, which the federal government instituted "to assist low income families with obtaining decent, safe, sanitary, and affordable rental housing." ECF No. 75 at 2, 3. Under Section 8, the United States Department of Housing and Urban Development contracts with public housing agencies like SNRHA. *Id.* at 3. SNRHA in turn enters into housing assistance payment (HAP) contracts with landlords to make monthly rent subsidy payments on behalf of eligible tenants. *Id.* at 4. Landlords also enter into a lease with the eligible tenant. *Id.* Under the terms of the HAP contract and federal law, a landlord cannot receive additional rent or fees, also known as side payments, not set forth in the HAP contract. *Id.* at 8.

In May 2015, Del Sol signed a HAP contract with SNRHA under which SNRHA agreed to make monthly housing assistance payments on behalf of Thornton. *Id.* at 4. Under the HAP contract, Del Sol certified not to receive any side payments. *Id.* at 8. In June 2015, Del Sol and Thornton entered into a year-long lease. *Id.* at 4. Neither the HAP contract nor the lease mentioned that Thornton was responsible for paying common area maintenance (CAM) fees to Del Sol. *Id.* Nevertheless, Del Sol, through AMC and Richardson, demanded that Thornton pay those fees, which she did. *Id.* Thornton renewed her lease with Del Sol in June 2016, June 2017,

June 2018, and June 2019. *Id.* at 4-6.  Each of the new leases had an addendum regarding CAM fees, but they did not specify the amount Thornton was responsible for paying. *Id.*  Del Sol did not provide these leases to SNRHA, though it was required to under the HAP contract. *Id.*

In December 2019, TMIF acquired the apartment property and subsequently agreed to assume the HAP contract and Thornton's June 2019 lease from Del Sol. *Id.* at 6-7, 9.  In doing so, TMIF accepted all the terms and conditions of the HAP contract. *Id.* at 7.  Due to TMIF's acceptance of the HAP contract, SNRHA issued payments to TMIF that subsidized the remaining months of Thornton's tenancy. *Id.*  Though it was required to under the HAP contract, TMIF did not provide a copy of the June 2019 lease to SNRHA. *Id.*  TMIF, through AMC and Richardson, demanded that Thornton pay monthly CAM fees from December 2019 to July 2020, which she did. *Id.* at 7, 10.

Thornton's last lease at the apartment ended in July 2020. *Id.* at 2.  During her five-year tenancy, Del Sol and TMIF, combined, received at least 57 rental subsidy payments from SNRHA and 57 CAM fee payments from Thornton. *Id.* at 7, 10.  Thornton alleges that Del Sol and TMIF knowingly, or with reckless disregard, collected the CAM and the rental subsidy payments, thereby knowingly breaching the HAP contract. *Id.* at 9, 10.  Under SNRHA's administrative plan for the housing assistance program, if SNRHA learned that a landlord accepted side payments, SNRHA would terminate the HAP contract, cease payments to the landlord, and bar the owner from further participation in the Section 8 Program. *Id.* at 10, 11.

**II. LEGAL STANDARD**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of

legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  Mere recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## II. ANALYSIS

### A. False Claims Act and Implied False Certification

Under the False Claims Act, anyone who "knowingly presents . . . a false or fraudulent claim for payment" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to the United States, or conspires to commit such a violation, is liable to the government for a civil penalty plus three times the damages the United States suffers as a result. 31 U.S.C. § 3729(a)(1)(a)-(c).

A party acts "knowingly" for purposes of the False Claims Act if it has actual knowledge, or if it acts in deliberate ignorance or reckless disregard of the pertinent information's truth or falsity. 31 U.S.C. § 3729(b)(1).  A "claim" is "any request or demand, whether under a contract or otherwise, for money or payment." *Id.* § 3729(b)(2).  The Ninth Circuit does not require a plaintiff to "identify representative examples of false claims to support every allegation," but rather finds it "sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid v.*

*Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (quotation omitted). The False Claims Act defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). However, not every statutory, regulatory, or contractual violation that gives the government the option to decline to pay is material. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). Rather, "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* at 193 (simplified).

A plaintiff may show that a claim is false by way of the implied false certification theory. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018). "Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Ebeid*, 616 F.3d at 998. The implied false certification theory can be a basis for False Claims Act liability if "two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 579 U.S. at 190; *see also Stephens Inst.*, 909 F.3d at 1018 (holding that the Ninth Circuit requires both *Escobar* factors to satisfy falsity element in a False Claims Act claim).

In sum, "a successful False Claims Act claim requires: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Stephens Inst.*, 909 F.3d at 1017 (quotation omitted).

Because a claim under the False Claims Act alleges fraud, it must be pleaded with particularity to satisfy Federal Rule of Civil Procedure 9(b). *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Id.* at 1055 (quotation omitted). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### B. TMIF's Motion to Dismiss

TMIF argues that Thornton's first amended complaint should be dismissed with prejudice because it fails to plausibly allege with particularity the elements of a False Claims Act claim. TMIF argues that Thornton fails to plausibly allege that TMIF made a "claim" because she alleges only that TMIF passively accepted the rent subsidy payments but not that TMIF affirmatively submitted any invoice, contract, or other document to SNRHA. TMIF also argues that it is not plausibly alleged that TMIF knowingly lied to SNRHA because Del Sol, not TMIF, executed the HAP contract and there are no allegations that Del Sol properly assigned the HAP contract to TMIF. TMIF also contends that there are no allegations from which to infer that TMIF had notice of Del Sol's alleged bad acts and failed to correct them. Thornton responds that she plausibly alleged a false claim under the theory of implied false certification by alleging that TMIF assumed the HAP contract and falsely certified that it would not charge side payments.

Thornton has plausibly and with particularity alleged each of the False Claims Act elements as to TMIF. She alleges that the HAP contract states that "payments from the SNRHA should be made to Del Sol"; that TMIF assumed the HAP contract from Del Sol; and that TMIF

6

collected monthly rental subsidies from SNRHA under that contract. ECF No. 75 at 4, 9, 10. It is reasonable to infer from these allegations that TMIF requested money under a contract from SNRHA, even if the first amended complaint does not allege specific invoices.

Thornton also plausibly alleges that TMIF's claims were false by means of implied false certification. She alleges that TMIF "certified not to receive any side payments" even though it was receiving side payments. *Id.* at 10. She also alleges that if SNRHA knew about the side payments, it would have ceased payments to TMIF, but TMIF continued to receive payments from SNRHA from December 2019 to July 2020. *Id.* at 10-11. Therefore, Thornton plausibly alleges that TMIF falsely certified that it was not receiving side payments and failed to disclose its noncompliance with that certification.

Additionally, the scienter element is met because scienter can be alleged generally and Thornton alleges that TMIF "knowingly collected illegal side payments" and "knowingly breach[ed] the HAP Contract" while receiving the monthly rental subsidies. *Id.* at 10. The materiality element is met because Thornton alleges that if SNRHA knew about the side payments it "would have terminated the HAP contract and ceased payments to . . . TMIF" and would bar the TMIF from further participation in the Section 8 Program. *Id.* at 10, 11. Moreover, it is reasonable to infer that SNRHA, an agency operating an affordable housing program, would find a landlord collecting undisclosed side payments from low-income tenants to be a material reason to terminate payments to the landlord. The inducement-to-pay element is also met because Thornton alleges that "[d]ue to TMIF's acceptance of the HAP contract, the SNRHA issued payments to TMIF that subsidized the remaining months of Plaintiff's tenancy at the property," from December 2019 to July 2020. *Id.* at 7, 10.

Lastly, Thornton has pleaded fraudulent conduct with enough particularity that TMIF is on notice as to what it needs to defend. Thornton has alleged that TMIF made a specific certification to a particular entity (a certification not to receive side payments in the HAP contract with SNRHA), that was false due to a specific course of conduct (TMIF collecting both the monthly rent subsidy payments and the CAM fees), over a specific period of time (December 2019 to July 2020). Because Thornton's first amended complaint plausibly alleges with particularity that TMIF violated the False Claims Act, I deny TMIF's motion to dismiss.

### C. AMC and Richardson's Motion to Dismiss

AMC and Richardson argue that Thornton fails to plead a False Claims Act violation because there are no allegations that they, or any defendant, made an affirmative claim. They also argue that there are no allegations demonstrating that they had the requisite scienter. Additionally, they contend that Thorton's allegations fail to meet the *Escobar* materiality requirement. Thornton responds that she plausibly pleaded AMC and Richardson's involvement in a fraudulent course of conduct by alleging that they collected side payments from her while SNRHA subsidized rent under the HAP contract. Thornton also contends that she plausibly pleaded that AMC and Richardson have the requisite scienter because they were agents of Del Sol and TMIF, so they have the same intent as Del Sol and TMIF.

As explained above, Thornton has plausibly alleged materiality. However, Thornton has not plausibly alleged the other requisite elements of a False Claims Act violation as to AMC and Richardson specifically. There are no allegations that AMC and Richardson, rather than Del Sol and TMIF, made a false claim or falsely certified something to the government. There are also no allegations that AMC and Richardson received payments from the government. Thornton appears to argue that AMC and Richardson are liable because they aided and abetted the

property owners in collecting the CAM fees from Thornton, but merely collecting the CAM fees does not sufficiently allege their involvement in a conspiracy to defraud the government.

As to scienter, I cannot infer from the first amended complaint that AMC and Richardson knew about or recklessly disregarded the false claims or certifications that the property owners allegedly made to SNRHA. Thornton cites a previous case of mine for the proposition that "[w]hen an agent acts in the name of the entity . . . the fraudulent intent of the agent is indistinguishable from the intent of the entity" to argue that AMC and Richardson have the same intent as the property owners. ECF No. 93 at 13 (emphasis omitted) (quoting *United States ex rel. Ellis v. Jing Shu Zheng*, No. 2:16-cv-01447-APG-NJK, 2018 WL 1074483, at *2 (D. Nev. Feb. 26, 2018)). In that case, a property owner authorized a property management agent to act on her behalf, so I held that the agent's scienter could be imputed to the property owner. That is the reverse of the situation here. Thornton does not cite to any authority showing that a property owner's scienter can be imputed to its agent.

I therefore grant AMC and Richardson's motion to dismiss. However, I grant Thornton leave to amend because it is not clear that amendment would be futile. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (quotation omitted)).

## V. CONCLUSION

I THEREFORE ORDER that defendant TMIF II Portola, LLC's motion to dismiss **(ECF No. 81) is DENIED.**

I FURTHER ORDER that defendant Apartment Management Consultants, LLC, and defendant Rene Richardson's Motion to Dismiss **(ECF No. 85) is GRANTED.**

I FURTHER ORDER that plaintiff Peggy Thornton may file an amended complaint by September 24, 2024, if facts exist to do so.

DATED this 27th day of August, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE